OPINION OF THE COURT
Harold Hyman, J.
Plaintiff commenced this action for a judgment declaring the defendants to be obligated to furnish plaintiff with indemnification and a defense to all claims asserted against it arising from an “occurrence” which took place at a certain premises on July 24, 1980.
The complaint, in brief, alleges that on May 28,1979 up to January 12, 1980, plaintiff was the “owner” of certain described premises; that defendant St. Paul Fire & Marine Insurance Company (hereinafter St. Paul) issued its liability insurance policy to it covering the said described premises, and defendant Continental Insurance Company (hereinafter Continental) issued its “umbrella excess” third-party liability policy, both of which policies were effective through May 28, 1980. That on January 12, 1980 plaintiff conveyed title to said premises to the New York City Industrial Development Agency, at which time (Jan. 12, 1980) plaintiff canceled said policies.
*448 On July 24,1980 a fire or explosion occurred at or in said premises resulting in various direct and third-party actions being brought against plaintiff for personal injuries and death based upon plaintiff’s alleged negligence in the ownership, operation and control of said premises.
The complaint further alleges that “since the plaintiff * * * has [had] no other function except * *'* as owner * * * until January 12, 1980, any act or omission which could serve as a predicate for a finding of liability against plaintiff in any of the aforesaid actions * * * of necessity occurred prior to January 12, 1980.”
The complaint continues, alleging that prompt notice of the fire, explosion and occurrence was thereupon given to both defendants, but that defendants did not respond thereto, which resulted in plaintiff believing that in the event any claim or suit for personal injuries or wrongful death be brought against it directly or indirectly arising from the July 24, 1980 occurrence that defendants would defend and indemnify it.
Continuing: Prior to March, 1982 plaintiff was named as defendant or third-party defendant in various suits arising out of the July 24, 1980 occurrence; and, plaintiff forwarded the processes to defendants. Thereafter, on March 17,1982, defendant St. Paul notified plaintiff that it would defend and indemnify plaintiff to the extent of the coverage except as to punitive damages (a copy of said communication is annexed to the moving papers).
Two days later, on March 19, 1982, the defendant St. Paul “hand delivered” to plaintiff a communication dated that day, restating its position regarding coverage; it therein called plaintiff’s attention to the fact that the policy was canceled (admittedly at the request of plaintiff) on January 12, 1980, that the alleged negligence and “occurrence” took place on July 24, 1980 and, that, according to the terms of the policy the definition of “bodily injury” means such as was “sustained by * * * occurs during the policy period”, and, therefore, based upon the above that no obligation existed upon it (St. Paul) to defend or indemnify plaintiff for injuries and/or damages which were sustained subsequent to the cancellation of the policy.
*449 On May 24, 1982 the March 19, 1982 communication was supplemented, but defendant’s position, taken in its March 19, 1982 letter was again reiterated.
Defendant St. Paul moved to dismiss the complaint under CPLR 3211 (subd [a], pars 1, 7). Defendant Continental was not served with defendant St. Paul’s moving papers herein, since it has not appeared or answered and, according to plaintiff, is in default thereof.
Plaintiff, in opposition to the motion, argues (1) that movant did not “disclaim” or “deny coverage” “as soon as is reasonably possible” in accordance with subdivision 8 of section 167 of the Insurance Law; (2) defendant is liable under the terms of the policy because the “occurrence” was a result of acts or omissions which occurred during the time it owned the building — coextensive with that period of time during which the policy was in force; (3) since St. Paul received notice of the “occurrence” in July, 1980 and made no comment one way or the other that plaintiff, therefore, had the right to assume that defendant would assume the defense and would indemnify it, particularly so since any theory of liability which could be asserted against plaintiff was parallel in time to defendant’s insurance coverage of plaintiff, and (4) defendant waived and is estopped to deny coverage.
In Zappone v Home Ins. Co. (55 NY2d 131, 137), Judge Meyer, writing for the majority of the Court of Appeals, stated: “The purpose for which subdivision 8 of section 167 [Insurance Law] was enacted was to avoid prejudice to the insured, the injured claimant * * * each of whom could be harmed by delay in learning of the carrier’s position * * * It was not, however, to provide an added source of indemnification which had never been contracted for and for which no premium had ever been paid.'' (Emphasis added.)
Herein the plaintiff itself had canceled the policy on January 12,1980 and had thus terminated its relationship to defendant some five months prior to the “occurrence”. Under such circumstances there simply was no insurance at all with regard to the “occurrence” of July 24,1980 and, therefore, no obligation could be imposed upon the insurer to disclaim or deny (Zappone v Home Ins. Co., supra, p 139; *450 see, also, Perez v Hartford Acc. & Ind. Co., 31 AD2d 895, 896, affd 26 NY2d 625, which inferentially held that subdivision 8 of section 167 of the Insurance Law does not require notice with respect to a policy which has been terminated). Whether the relationship no longer exists because a policy has been terminated or never came into existence is simply irrelevant, the result is the same (Zappone v Home Ins. Co., supra, pp 139, 140). In the latter-cited case the dissenters (p 143) also recognized the law to be that “When a policy has been terminated or canceled, there is no predicate for application of the statute” (Insurance Law, § 167, subd 8).
Plaintiff’s contention, therefore, that it was entitled to a denial or disclaimer within a reasonable time after it gave notice of the July 24, 1980 “occurrence” pursuant to subdivision 8 of section 167 of the Insurance Law, and that failing to receive such from defendant prior to the commencement of suits based upon such occurrence, that it had the right to rely upon such silence as being indicative of coverage, is without substance.
Plaintiff contends that the definitions in the policy of the terms “occurrence” and “bodily injury” sustain its position that coverage must be afforded it because the “bodily injuries” were sustained as a result of acts or omissions which occurred during the time it owned the building, a time coextensive with the time the policy was in force. The court does not agree.
The policy defines an “occurrence” to mean “an accident, including continuous or repeated exposure to conditions, which results in bodily injury * * * neither expected nor intended from the stand point of the Insured”; and “bodily injury” is defined as “bodily injury sustained by any person which occurs during the policy period”. (Emphasis added.)
It appears that the policy does not include mere exposure to “conditions” existent during the policy period, but rather focuses on the “result” in “bodily injury” during the policy period. It therefore appears to indicate that coverage is not upon the act or conditions during the period of existence of the policy which might give rise to ultimate liability, but rather upon the “result” thereof taking place during said *451 policy period of existence. As held in American Motorists Ins. Co. v Squibb & Sons (95 Misc 2d 222, 224), “it is the result which is keyed to the public period, and not the accident or exposure.” (See, also, Eagle-Picher Inds. v Liberty Mut. Ins. Co., 523 F Supp 110, 114; but see Keene Corp. v Insurance Co. of North Amer., 667 F2d 1034,1045; and Insurance Co. of North Amer. v Forty-Eight Insulations, 633 F2d 1212,1222-1223, which applied “exposure to asbestos” cases.)
It is true that insurance policies are to be construed liberally in favor of the insured and strictly against the insurer, but when the policy provisions are clear and unambiguous they must be given their plain and ordinary meaning (Government Employees Ins. Co. v Kligler, 42 NY2d 863; McGroarty v Great Amer. Ins. Co., 36 NY2d 358, 364). The language of the policy in question is clear and unambiguous; and, to construe it otherwise, as suggested by plaintiff, would be to place an unwarranted interpretation thereon.
The manifestation by “result” of bodily injury having taken place some seven months after the plaintiff had itself terminated the policy, the court may not now rewrite the contract between the parties to allow for coverage neither paid for, contemplated nor provided for. This is not a situation similar to such as may be found in products liability or asbestos cases.
Where the underlying litigation falls outside the scope of the policy an insurer does not lose its right to the defense of noncoverage by an initial disclaimer of liability based upon exclusions, since such defense is never waived by a failure to assert it in a notice of disclaimer (Schiff Assoc, v Flack, 51 NY2d 692, 700). Certainly, therefore, where no policy exists, particularly one that has been canceled-terminated by the insured, there can be no predicate for disallowance of an insurer’s defense that no contractual obligation exists regardless of disclaimer or otherwise.
Nor can there be a “waiver” as contended by plaintiff, for to claim such against an insurer the underlying coverage must exist — be subsisting; if not, then the doctrine of waiver is simply inapplicable (Schiff Assoc, v Flack, supra, *452 p 698; Draper v Oswego County Fire Relief Assn., 190 NY 12, 17).
True, the principles of equitable estoppel are sometimes made applicable in insurance litigation, but such principles cannot be applied here in view of the fact that the insurer at no time actually undertook the defense of any of the underlying litigation so as to create a reliance by plaintiff resulting to its detriment of losing the right to control its own defense (Schiff Assoc, v Flack, supra, p 699). Here the insurer, although in its letter of March 17, 1982 stated it would defend and indemnify, it promptly, on March 19, 1982, two days later, specifically notified plaintiff that “It appears that no obligation will exist for this company to defend and/or indemnify the insureds since the injuries and/or damages sustained were subsequent to the cancellation of the insured’s policy.” Merely because the insurer also stated that it would continue to evaluate its position and would further advise the insured of its decision does not of itself create any change in its unequivocal primary position that no obligation existed on it to defend or indemnify since the injuries were sustained subsequent to plaintiff canceling the policy, and this is particularly so where there is no claim that the insurer in any way appeared in or entered into the underlying litigation (Schiff Assoc, v Flack, supra, p 699).
The mere fact that in 1980 the defendant did not respond to plaintiff regarding the “occurrence” is totally irrelevant; there was no requirement on the insurer to do so, particularly where the policy had been canceled by plaintiff itself in January, 1980, long before the “occurrence” and the resultant injury.
Defendant St. Paul’s motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 1, 7) is granted; and, judgment in favor of St. Paul Fire & Marine Insurance Company against plaintiff is granted with taxable costs and disbursements.