**HOECHST CELANESE CORPORATION and Celanese Engineering Resins, Inc., Corporations of the State of Delaware, Plaintiffs Below, Appellants/Cross–Appellees,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S LONDON; London Market Insurance Company; First State Insurance Co.; Hartford Accident & Indemnity Company; New England Insurance Co.; New England Reinsurance Co.; Twin City Fire Insurance Co., Defendants Below, Appellees/Cross–Appellants,**

and

**Fireman's Fund Insurance Company; North River Insurance Company, Defendants Below, Appellees.**

No. 329, 1994.

Supreme Court of Delaware.

Submitted: March 15, 1996.
Decided: March 27, 1996.

Kill, Olick & Oshinsky, Washington, D.C., for Appellants/Cross–Appellees Hoechst Celanese Corporation and Celanese Engineering Resins, Inc.

James W. Semple and Neal C. Belgam, Morris, James, Hitchens & Williams, Wilmington. Of counsel: Laurence M. McHeffey and Gary S. Kull, McElroy, Deutsch & Mulvaney, Morristown, New Jersey, for Appellee North River Insurance Company.

Richard W. Pell and Joel R. Brown, Tybout, Redfearn & Pell, Wilmington. Of counsel: William J. Bowman (argued), and Patrick F. Hofer, Hogan & Hartson, L.L.P., Washington, D.C., for Appellees/Cross–Appellants First State Insurance Co., New England Insurance Co., New England Reinsurance Co., Twin City Fire Insurance Co. and Hartford Accident & Indemnity Company.

Francis J. Murphy, Jr., John S. Spadaro and Jonathan L. Parshall, Murphy, Welch & Spadaro, Wilmington, for Appellees/Cross–Appellants Certain Underwriters at Lloyd's London and London Market Insurance Companies.

Richard K. Herrmann and Mary Matterer, Esquire, Stradley, Ronon, Stevens & Young, Wilmington. Of counsel: William A. Savino, Stephen Smirti and James Stewart, Rivkin, Radler & Kremer, Uniondale, New York, for Appellee Fireman's Fund Insurance Company.

Richard E. Poole, James F. Burnett, David J. Baldwin and W. Harding Drane, Jr., Potter, Anderson & Corroon, Wilmington. Of counsel: Eugene R. Anderson, Jordan S. Stanzler (argued), Lorelie S. Masters, Jean M. Farrell and Koorosh Talieh, Anderson,

Before WALSH, HOLLAND, and HARTNETT, JJ.

HOLLAND, Justice:

This is an interlocutory appeal and cross-appeal following the granting of a motion for summary judgment in Superior Court in favor of the defendants-appellees/cross-appellants (the "Insurance Companies").[1] This litigation arises from a series of third-party liability claims which have been made against

---

1. The insurers involved in the trigger briefing in the Superior Court included: North River Insurance Company; the Hartford Accident & Indemnity Company, First State Insurance Company, New England Insurance Company, New England Reinsurance Company, Twin City Fire Insurance Company, Fireman's Fund Insurance Company; Certain Underwriters at Lloyd's, London; London Market Insurance Companies; and Columbia Casualty Company. North River Insurance Company and Fireman's Fund Insurance Company did not file a cross-appeal. Columbia Casualty Company has since been dismissed from the litigation.

the plaintiff-appellants/cross-appellees Hoechst Celanese Corporation and Celanese Engineering Resins, Inc. ("HCC"). The claims relate to the alleged failure of plumbing systems containing fittings made from Celcon®, a product manufactured by HCC.

The issue on summary judgment concerned when insurance coverage is "triggered." [2] The Superior Court, ruling on cross-motions for summary judgment, determined that property damage "occurs," for purposes of triggering insurance coverage, (1) when the plumbing fittings fail and cause physical injury to tangible property, or (2) when a homeowner decides to replace the plumbing fixtures. HCC appeals both trigger rulings, while seven of the Insurance Companies appeal only the second trigger ruling.

This Court has concluded that the appeal and cross-appeal are both meritorious. Therefore, the interlocutory judgments of the Superior Court, on the trigger issue, are reversed. This matter is remanded for further proceedings.

### Facts

HCC manufactured Celcon®, an acetyl copolymer resin, which it sold in pellet form to third parties for use in a variety of products. From 1978 until the late 1980's, Celcon® was sold to third parties, such as U.S. Brass, for use in polybutylene plumbing systems. These third parties melted the Celcon® pellets down and molded them into a plumbing fitting, usually in the shape of an elbow or a "T."

The plumbing fitting would then be incorporated into the plumbing system by inserting the fitting into the end of a polybutylene pipe, positioning a metal ring over the connection between the pipe and the fitting, and crimping the ring with a large crimping tool. The polybutylene plumbing systems were incorporated into houses, apartments, condominiums, and other housing units across the country.

Subsequently, homeowners, contractors, developers, and plumbing system manufacturers asserted claims against HCC. The claimants contend that HCC is liable for property damage resulting from the failure of the plumbing fittings. The claimants allege that Celcon® is defective and thus damages the fittings, the plumbing systems, and their homes, by degrading over time and causing leaks from the fittings and systems.

### Terms of Coverage
### Liability Insurance Policies

HCC purchased general liability insurance coverage, consisting of both underlying umbrella and excess policies, from various insurance companies for policy periods from January 1, 1978 to April 1, 1986. Under the provisions of these policies, the insurance companies agreed to pay all sums which HCC would become legally obligated to pay as damages, because of "property damage" caused by an "occurrence." [3] "Occurrence" is defined under the policies as:

> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

"Property damage" is defined as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The key issue presented by this appeal concerns the scope of the term "property damage."

### Superior Court Ruling
### Cross–Motions for Summary Judgment

HCC filed a declaratory action in Superior Court against various insurance companies, seeking a determination that the policies issued by such insurers provided coverage for

---

**2.** When the word "trigger" is used in insurance, it is a term of art which means the event that activates coverage under the policy.

**3.** This litigation involves both "occurrence" and "claims-made" policies. HCC's claims-made policies are *not* at issue in this appeal.

the third-party liability claims against HCC. Several of the insurance companies filed a motion for summary judgment on the basis that "property damage," as defined under the policies, does not occur until a leak occurs, thereby causing physical injury to or destruction of tangible property. HCC filed a cross-motion for summary judgment. It asserted that property damage to the plumbing fitting, the plumbing system, and the home takes place upon installation of the system and continues through the resulting cracking of the fitting, to the time that water begins to leak from the plumbing system.

The Superior Court held that, under New York law,[4] "property damage occurs only either at the time of a leak in the plumbing systems causing injury to tangible property or upon a determination by the owners that the plumbing system itself needs to be replaced." Accordingly, the Superior Court concluded that the only insurance policies under which the third-party liability claims could potentially be covered were those policies in effect when a leak or damage to the plumbing system itself occurred or when the homeowner decided to replace the plumbing system. Both rulings are at issue in this appeal.

### This Appeal
### The Parties' Contentions

HCC asserts that the Superior Court erred in finding that "property damage" occurs only at the time of a leak in the plumbing system which causes injury to tangible property. In support of this argument, HCC sets forth four contentions. First, HCC argues that, under New York law, any physical damage, no matter how slight, triggers insurance coverage. Second, HCC asserts that the Superior Court could not have properly granted summary judgment to the insurer defendants based on the record before the court. Third, HCC asserts that the incorporation of an allegedly defective product into

another product triggers insurance coverage. Finally, HCC asserts that, for purposes of determining trigger of coverage, the insurer defendants should be bound by their prior admissions regarding when property damage occurs. The Insurance Companies disagree with each of HCC's assignments of error.

HCC and seven of the Insurance Companies have cross-appealed from the Superior Court's determination that a homeowner's "decision to replace" the plumbing system triggers insurance coverage. HCC agrees that ruling was incorrect. HCC's reasons differ, however, from those that are asserted by the seven Insurance Companies.

### New York Law
### Application and Analysis

For purposes of this appeal, HCC and the Insurance Companies agree on three basic matters. First, New York law controls.[5] Second, the trigger of coverage under New York law is "injury in fact," i.e., "physical injury to or destruction of tangible property" during the policy period. Under New York's "injury-in-fact" rule, covered property damage must, in fact, result during the policy period to trigger the policy in effect at that time. *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617 (2d Cir.1993), *amended* (May 16, 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994); *Cortland Pump & Equip., Inc. v. Firemen's Ins. Co. of Newark,* N.Y.Supr.Ct.App.Div., 194 A.D.2d 117, 604 N.Y.S.2d 633, 636 (1993); *Abex Corp. v. Maryland Cas. Co.,* 790 F.2d 119 (D.C.Cir.1986) (applying New York law); *American Home Products Corp. v. Liberty Mutual Ins. Co.,* 748 F.2d 760 (2d Cir.1984). Third, the issue on appeal is when does property damage, as defined by the policies, take place in the context of the underlying plumbing claims.

The seminal case regarding the issue of injury-in-fact appears to be *American Home*

---

4. In a March 28, 1994 memorandum opinion regarding choice of law, the Superior Court determined that New York law applied to all issues relating to performance pursuant to the insurance contracts at issue in the litigation. That holding is not in dispute for purposes of the present appeal.

5. HCC disagrees with the Superior Court's conclusion that New York law governs. HCC has not contested that decision, however, for purposes of this interlocutory appeal.

*Products Corp. v. Liberty Mutual Ins. Co.*, 748 F.2d 760 (2d Cir.1984) (*"American Home Products II"*).[6] In that case, the policyholder had been sued for liability which was related to several pharmaceutical products. *Id.* at 762. Liberty Mutual contended that coverage was not triggered until the injury had manifested itself, *i.e.*, was observable or diagnosable. *Id.* The Second Circuit rejected Liberty Mutual's argument and held that insurance coverage is triggered by an injury-in-fact during the policy period.

> We agree with the district court's conclusion, substantially for the reasons stated in its opinion, that the trigger-of-coverage clause unambiguously provides for coverage based upon the occurrence during the policy period of an injury in fact. *We reject only so much of the court's decision as holds that "injury in fact" means an injury that was "diagnosable" or "compensable" during the policy period.*
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> *"A real but undiscovered injury,* proved in retrospect to have existed at the relevant time, would establish coverage, irrespective of the time the injury became [diagnosable]."

*Id.* at 764, 766 (*quoting American Home Products Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485, 1497 (S.D.N.Y.1983), *aff'd as modified*, 748 F.2d 760 (2d Cir.1984) (*"Amer-*

*ican Home Products I"*)) (emphasis added). The Second Circuit subsequently applied its rationale in *American Home Products II* to property damage claims. *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 625 (2d Cir.1993), *amended* (May 16, 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994).[7]

The Seventh Circuit has addressed the "trigger of coverage" issue in the context of the same Celcon® fittings and polybutylene plumbing systems that are the subject matter of the case *sub judice*. *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.*, 972 F.2d 805 (7th Cir.1992), *cert. denied*, 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993) (*"Eljer II"*). The decision in *Eljer II* was based upon both New York and Illinois law, which the Seventh Circuit concluded were the same. *Id.* at 812.[8] The Seventh Circuit found that "physical injury" triggering coverage begins once an allegedly defective product is incorporated into other property. *Id.* at 814.

The New York Court of Appeals has held that property damage during the policy period can trigger insurance coverage. *McGroarty v. Great Am. Ins. Co.*, N.Y.Ct. App., 36 N.Y.2d 358, 368 N.Y.S.2d 485, 490–91, 329 N.E.2d 172, 176 (1975). In *McGroarty*, for example, the gradual cracking and settling of a building over a period of months between 1965 and 1966 was a process that

---

**6.** Although no New York state court has expressly held that *American Home Products II* is an accurate analysis of New York law, several New York decisions have recognized injury-in-fact as the trigger for insurance coverage. *See, e.g., Cortland Pump & Equip. Inc. v. Firemen's Ins. Co. of Newark*, N.Y.Supr.Ct.App.Div., 194 A.D.2d 117, 604 N.Y.S.2d 633, 636 (1993) (holding injury in fact was appropriate trigger for property damage coverage); *Matter of Midland Insurance Co.*, N.Y.Supr.Ct., 164 Misc.2d 363, 623 N.Y.S.2d 689, 693–95 (1994) (since parties stipulated that injury in asbestos cases begins shortly after inhalation, coverage is triggered where the injured party is exposed to asbestos at any time during the policy period). *Cf. Continental Casualty Co. v. Rapid–American Corp.*, Ct.App., 80 N.Y.2d 640, 593 N.Y.S.2d 966, 971–72, 609 N.E.2d 506, 511–12 (1993) (parties stipulated that injury-in-fact triggered coverage under Comprehensive General Liability policy).

**7.** The Second Circuit declined to distinguish between personal injury and property damage cov-

erage cases, noting: "Although the insurers urge that we treat the occurrence definition for property damage differently than for bodily injury, their contracts have not done so." *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 625 (2d Cir.1993), *amended* (May 16, 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994).

**8.** Illinois courts considering insurance coverage for the same plumbing claims have disagreed with the *Eljer II* assessment of Illinois law, and have held that "leak" is the proper trigger for the underlying claims. *Travelers Indem. Co. v. Eljer Mfg., Inc.*, Ill.Cir., Nos. 91 CH 08364, 92 CH 4327 (Sept. 28, 1993); *Moen, Inc. v. Allstate Ins. Co.*, Ill.Cir., No. 93 CH 11662 (Dec. 13, 1994). HCC asserts that *Eljer* has been approved, however, as an accurate statement of New York law, in *Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617 (2d Cir.1993), *amended* (May 16, 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 559 (1994).

triggered coverage by successive insurance policies. *Id.* Thus, insurance coverage was not dependent upon when the damage from the undetected process was discovered. *Id. Accord American Home Products I,* 565 F.Supp. at 1498 ("[C]asualty insurance coverage is extended to a home "damaged" by slow-moving causes, such as a shifting foundation or an attack of termites, as soon as the effect of those causes is shown to have inflicted measurable, compensable, albeit unascertained, damage on the policyholder during the policy period."). *See also Maryland Cas. Co. v. W.R. Grace & Co.,* 23 F.3d at 628.

### New York Law
### Continuum of Damage

The Superior Court decided the "injury-in-fact" issue as a matter of law. The Superior Court held that "property damage" occurs *only* at the time of a leak in the plumbing system, or when the homeowner decides to replace the system. The Superior Court relied upon three cases: *Greenlee v. Sherman,* N.Y.Supr.Ct.App.Div., 142 A.D.2d 472, 536 N.Y.S.2d 877 (1989); *Young v. Insurance Co. of North America,* 870 F.2d 610 (11th Cir. 1989); and *Holmes Protection of New York, Inc. v. National Union Fire Insurance Co.,* N.Y.Supr.Ct.App.Div., 152 A.D.2d 496, 543 N.Y.S.2d 459 (1989). We find those cases to be distinguishable. Each involved insurance coverage, not for a policyholder's defective product, but for its negligent ·work. *See Cortland Pump & Equip. Inc. v. Firemen's Ins. Co.,* 604 N.Y.S.2d at 636.

■■■ This Court has concluded that the Superior Court erred in holding that, as a matter of New York law, "property damage"

occurs *only* at the time of a leak in the plumbing system, or when the homeowner decides to replace the system.[9] We have determined that, under New York law, an injury-in-fact or property damage may occur at different points in time along the continuum from initial exposure or installation to actual manifestation. *American Home Products I,* 565 F.Supp. at 1497–98; *American Home Products II,* 748 F.2d at 764–66. *Compare Fireman's Fund Insurance Co. v. Hartford Fire Ins. Co.,* 73 F.3d 811 (8th Cir.1996). Accordingly, in this case, property damage sufficient to trigger insurance coverage may occur as early as installation of the plumbing systems into housing units. *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.,* 972 F.2d 805 (7th Cir.1992), *cert. denied,* 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 267 (1993). *See also Sturges Mfg. Co. v. Utica Mutual Ins. Co.,* N.Y.Ct.App., 37 N.Y.2d 69, 371 N.Y.S.2d 444, 332 N.E.2d 319 (1975).

### Trigger of Coverage
### Material Factual Disputes

■■■ The question of when injury occurred is an issue of fact. *See American Home Products II,* 748 F.2d at 763; *American Home Products I,* 565 F.Supp. at 1509; *Abex Corp. v. Maryland Casualty Co.,* 790 F.2d at 128; *Stonewall Insurance Co. v. Asbestos Claims Management Corp.,* 73 F.3d 1178 (2d Cir.1995).[10] The critical inquiry in making that factual determination is whether the injury or damage *occurred during the policy period,* even if the injury or damage did not become manifest until after the policy period.[11] Such a factual determination is not an impossible task:

---

**9.** The standard of review in an appeal from the grant of summary judgment is *de novo. Merrill v. Crothall–American, Inc.,* Del.Supr., 606 A.2d 96, 99 (1992).

**10.** Thus, for example, in *Stonewall,* the jury was apparently instructed that, even if bodily injury is so minute as to be undiscoverable at the time it takes place, if, at some later time, that bodily injury is discovered, the jury can determine that the policy in effect when the "real but undiscovered injury" took place is triggered. *Stonewall Insurance Co. v. National Gypsum Co.,* 7 Mealey's Litig.Rep. (Insurance) # 1 (11/3/92) (S.D.N.Y. October 1992 Jury Charge). *See also Maryland*

*Cas. Co. v. W.R. Grace & Co.,* 23 F.3d at 626–27; *American Home Products II,* 748 F.2d at 766.

**11.** *See, e.g., American Home Products II,* 748 F.2d at 764 ("[S]ince a cause normally precedes its effect, it is plain that an injury could occur during the policy period although the exposure that caused it preceded that period."); *American Motorists Insurance Co. v. E.R. Squibb & Sons, Inc.,* N.Y.Supr.Ct., 95 Misc.2d 222, 406 N.Y.S.2d 658, 659–60 (1978) ("[C]overage is predicated not on the act which might give rise to ultimate liability, but upon the result.... It is the *result* which is keyed to the policy period, and not the accident or exposure."); *Van Wyck Assoc. v. St.*

The courts are wrong to conclude that ... experts and finders of fact will be unable to determine the time of actual injury ... with sufficient accuracy. In many cases, the onset of injury ... will be possible to pinpoint with great certainty, since the time of such an occurrence will be simultaneous with exposure or manifestation. Even where the injury ... cannot be pinpointed, however, experts will be able to place before the parties for purposes of negotiation, and before the finders of fact at trial, estimates based on a reasonable degree of ... certainty as to when the [injury occurred.] ... Of course experts will be unable in many cases to identify the exact day on which an injury ... occurred. But such precision is not required; all that is necessary is reasonably reliable evidence that the injury ... more likely than not occurred during a period of coverage,....

*American Home Products I,* 565 F.Supp. at 1509.

■ In order to trigger coverage, an insured must set forth sufficient factual evidence to prove the existence of an injury-in-fact during the policy period. *American Home Products II,* 748 F.2d at 763. If an insured offers sufficient proof which *is* capable of establishing that injury or damage more likely than not occurred during a particular policy period, a trial court must permit the presentation of such proof to the trier of fact. It is inappropriate to resolve that factual issue on summary judgment. *See Stonewall Insurance Co. v. Asbestos Claims Management Corp.,* 73 F.3d at 1213–14.

■ The Superior Court acknowledged that the issue of when property damage occurred presented a question of fact.[12] Its ruling that the homeowner's decision to replace the plumbing system triggers coverage was an express recognition of the *fact* that property damage may precede a leak. It is the objective factual evidence of pre-leak damage that constitutes the trigger, however, not the homeowner's subjective decision to replace the system. *See Collins v. Pittsburgh–Corning,* Del.Supr., 673 A.2d 159 (1996) (subjective belief regarding medical condition).

■ The record reflects genuine questions of material fact about when injury-in-fact and property damage took place. HCC presented evidence that the alleged property damage may have taken place "over time through a process of cracking, deterioration, or corrosion commencing at installation." Therefore, the Superior Court was precluded from granting the Insurance Companies' motion for summary judgment. *Accord Collins v. Pittsburgh Corning,* 673 A.2d at 161.

### Conclusion

The interlocutory judgments of the Superior Court, on the trigger issue, are reversed. This matter is remanded for further proceedings.

Paul Fire & Marine Insurance Co., N.Y.Supr.Ct., 115 Misc.2d 447, 454 N.Y.S.2d 266, 269 (1982), aff'd, N.Y.Supr.Ct.App.Div., 95 A.D.2d 989, 464 N.Y.S.2d 617 (1983) ("[C]overage is not upon the act or conditions during the period of existence of the policy which might give rise to ultimate liability, but rather upon the "result" thereof taking place during said policy period of existence."). *See also* Yin, *Nailing Jello to a Wall: A Uniform Approach for Adjudicating Insurance Coverage Disputes in Products Liability Cases with Delayed Manifestation Injuries and Damages,* 83 Cal.L.Rev. 1243 (1995).

12. The Superior Court recognized in other contemporaneous rulings, which are not involved in this interlocutory appeal, that whether physical injury to the plumbing system itself takes place in addition to and before water leaks from the system involves questions of fact. It did this when the Insurance Companies moved for "Summary Judgment That The Underlying Claims Do Not Involve 'Property Damage' Absent a Leak." The Superior Court denied that motion, finding that "[m]aterial issues of fact are presented regarding whether 'property damage' ... actually existed under the circumstances of these claims."