AETNA CASUALTY &
SURETY COMPANY

v.

ABBOTT LABORATORIES, INC.; Parke, Davis & Company; William H. Rorer, Inc.; and the Upjohn Company

v.

CONTINENTAL INSURANCE COMPANY and the Hartford Accident and Indemnity Insurance Company.

Civ. No. H–82–243(JAC).

United States District Court,
D. Connecticut.

Feb. 14, 1986.

Thomas J. Groark, Jr., Allan B. Taylor, Daniel L. Fitzmaurice, Hartford, Conn., for plaintiff Aetna Cas. & Sur. Co.

J. Read Murphy, H. Kennedy Hudner, Hartford, Conn., Harold D. Murry, Jr., John C. Calender, Washington, D.C., for defendant Abbott Laboratories, Inc.

R. Cornelius Danaher, Jr., James T. Flaherty, J. Spangler Kieffer, III, Hartford, Conn., Robert N. Sayler, Edward J. Beder, Jr., John G. Buchanan, III, Washington, D.C., for defendant The Upjohn Co.

Robert B. Cohen, Dennis C. Cavanaugh, Hartford, Conn., for defendant Parke, Davis & Co.

Ralph G. Elliot, Robert L. Keepnews, Patrick W. Boatman, William S. Fish, Hartford, Conn., David L. Grove, Jeremy D. Mishkin, Philadelphia, Pa., for defendant William H. Rorer, Inc.

Janet L. Lawler, Thomas J. Hagarty, Michael G. Durham, Hartford, Conn., for third-party defendant Continental Ins. Co.

Andrew J. O'Keefe, Denise Martino Phelan, Richard J. Kenny, Hartford, Conn., for third-party defendant Hartford Accident & Indemnity.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

The issue before the court on these cross-motions for summary judgment is the obligation of three insurance companies to defend and indemnify four pharmaceutical companies against product liability claims arising out of their production of the drug Diethylstilbestrol ("DES").[1] The resolution of this issue requires an interpretation of the trigger-of-coverage provisions of the standardized insurance policies issued by the insurers to the pharmaceutical manufacturers.

Aetna Casualty & Surety Company ("Aetna" or "the plaintiff") was the primary-level product liability insurer of the defendants Abbott Laboratories ("Abbott"), The Upjohn Company ("Upjohn"), Parke, Davis & Company ("Parke-Davis"), and William H. Rorer, Inc. ("Rorer") during some or all of the period in which each company manufactured DES.[2] Parke-Davis was subsequently insured by the Continental Insurance Company ("Continental") and the Hartford Accident & Indemnity Company ("Hartford") and has impleaded those insurers as third-party defendants in this action.

The relationships between the insurance companies and the pharmaceutical companies are governed by variants of the Comprehensive General Liability Policy ("CGL"), which has been described by our Court of Appeals as "a standard-form policy for liability coverage introduced by the insurance industry in the mid–1960's to deal with the problem of liability for injuries caused over a period of time." *American Home Products Corporation v. Liberty Mutual Insurance Company*, 748 F.2d 760, 762 (2d Cir.1984) (Kearse, J.) ("*American Home Products*"). These policies provided the pharmaceutical companies with liability coverage against "occurrences ... which result[ ], during the policy period, in bodily injury or property damage," or, in more recent policies, against personal injury or property damage "which occurs during the policy period."[3] It is the meaning

---

1. DES is a synthetic hormone that was widely prescribed from the 1940s until 1971 for the prevention of miscarriages and for a number of other medical purposes. DES has been associated with a rare form of vaginal cancer called "clear cell carcinoma" and a benign vaginal condition called "adenosis" among women who were exposed to the drug *in utero*. It has also been suggested that exposure to DES may produce an increased incidence of breast and gynecological cancer among women who ingested the drug during pregnancy as well as an increased incidence of infertility and genital abnormalities among the sons and daughters of these women. *See generally* R. Apfel & S. Fisher, *To Do No Harm* 1–2 (1984) (disclosing contents of an "Advisory" issued in 1978 by the DES Task Force established by the Assistant Secretary for Health of the United States Department of Health, Education and Welfare).

2. Aetna provided primary-level product liability coverage to Abbott from January 1, 1961 to January 1, 1970; to Parke-Davis from January 1, 1954 to January 1, 1971; to Rorer from January 1, 1965 to January 1, 1977; and to Upjohn from January 1, 1956 to September 30, 1977. *See* Statement of Undisputed Material Facts in Support of Aetna's Motion for Summary Judgment As To All Defendants (filed March 26, 1984), ¶¶ 1–4. Parke-Davis was insured by Hartford from January 1, 1971, to December 31, 1974, and by Continental thereafter. *See* Amended Counterclaim of Parke-Davis (filed Dec. 1, 1982), ¶¶ 1, 11, 12.

3. The relevant GCL policies in effect from January 1954 to January 1967 provided, with minor variations in language, for coverage with respect to bodily injury or property damage resulting from an "occurrence," which was de-

of this policy language that is the subject of dispute in the instant lawsuit.

Aetna contends that the quoted language provides liability coverage only if the DES-related injury becomes manifest during the policy period. In contrast, the defendants assert that the language provides coverage if the policy was in effect at any time between the initial exposure to DES and the ultimate cessation of the DES-related injury. Finally, one of the third-party defendants suggests that the language provides coverage for all DES-related injuries sustained by persons born within the policy period. The court finds that each of these *post hoc* interpretations of the relevant policy language—while consistent with the particular pecuniary interests of its proponent or proponents—is not fully consistent with the clear meaning of the GCL.

## I.

Our Court of Appeals analyzed provisions of the CGL that are virtually identical to the provisions at issue in the instant action[4] in *American Home Products, supra, aff'g as modified,* 565 F.Supp. 1485 (S.D.N.Y.1983) (Sofaer, J.). In that decision, the Court of Appeals affirmed the district court's rejection of the "manifestation"

theory of coverage proffered by the plaintiff in this action as well as the "exposure" and "continuous injury" theories that have been proffered at various times by the defendant pharmaceutical companies.

Instead, the Court of Appeals held as a matter of law that the language of the insurance policies "unambiguously provides for coverage based upon the occurrence during the policy period of an injury in fact." 748 F.2d at 764. Any other interpretation of the trigger-of-coverage provisions, said the court, would "depart[ ] from the policies' language [or] import[ ] expansions of or limitations on the words that do not ordinarily exist." *Id.* at 765.

In rejecting as "unreasonable" the insurer's argument that "injury" ought to be construed to mean "manifestation of injury," the Court of Appeals observed that

[s]ome types of injury to the body occur prior to the appearance of any symptoms; thus, the manifestation of the injury may well occur after the injury itself. There is no language in the policies that purports to limit coverage only to injuries that become apparent during the policy period, regardless of when the injury actually occurred.

R. Keeton, *Basic Text on Insurance Law* ¶ 2.11(c) (1983). Courts have found the terms of the GCL policies of various insurers to be functionally identical notwithstanding minor variations in language. *See, e.g., Keene Corporation v. Insurance Company of North America,* 667 F.2d 1034, 1039 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

4. *See, e.g.,* Joint Memorandum of the Upjohn Company and Abbott Laboratories Concerning the Significance of the *American Home* Decision to their Pending Renewed Motion for Partial Summary Judgment (filed December 14, 1984), at 2 (stating that the relevant policy language in *American Home Products* "does not differ in any significant respect from the operative occurrence language here at issue"); Plaintiff's Memorandum in Response to the Decision of the Court of Appeals in *American Home Products* (filed Dec. 14, 1984), at 1 (noting that *American Home Products* is relevant to the instant case because "it construes policies which, like those in this case, ... 'are variants of the Comprehensive General Liability Policy,'" *quoting American Home Products, supra,* 748 F.2d at 762).

fined as "an event, or continuous or repeated exposure to conditions, which unexpectedly caused injury during the policy period." The policies in effect from January 1967 to January 1973 similarly provided for coverage with respect to an "occurrence," which was defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The policies in effect after January 1973 provided coverage against, *inter alia,* "bodily injury," which was defined as "bodily injury, sickness or disease sustained by any person which occurs during the policy period." *See, e.g.,* Defendant William H. Rorer, Inc's Joinder in Motion for Summary Judgment of Abbott Laboratories and The Upjohn Company (filed Feb. 3, 1983), Appendix A; Memorandum of Law in Support of Aetna's Motion for Summary Judgment as to Defendant Parke-Davis (filed Feb. 3, 1983), Appendix of Policies. The insurance industry has for many years used standardized policies, such as the GCL policy, which are drafted and periodically revised by joint committees of insurance industry representatives. *See, e.g.,*

*Id.* The court emphasized that an injury need not have become "diagnosable" or "compensable" in order to constitute an "injury in fact"; instead, "a real but undiscovered injury, proved in retrospect to have existed at the relevant time, would establish coverage, irrespective of the time the injury became [diagnosable]." *Id.* at 766, *quoting* 565 F.Supp. at 1497.

█ The Court of Appeals likewise rejected the insured's argument that exposure to a potential injurious product is sufficient to trigger coverage, explaining that ▐njury cannot be read as the equivalent of exposure, because the policy contemplates injury caused by exposure; since a cause normally precedes its effect, it is plain that an injury could occur during the policy period although the exposure that caused it preceded that period.

*Id.* [5]

All but one of the parties appear to acknowledge, as they must, that *American Home Products* controls the issues to be resolved in the pending cross-motions for summary judgment. *See, e.g.,* Plaintiff's Memorandum in Response to the Decision of the Court of Appeals in *American Home Products* (filed Dec. 14, 1984) ("Aetna Memorandum"), at 1, n. 1; Supplemental Memorandum of Law by Defendant-Third Party Plaintiff Parke, Davis & Company in Support of Its Motion for Partial Summary Judgment (filed Dec. 14, 1984) ("Parke-Davis Memorandum") at 1.

█ It is true that the insurance contracts at issue in *American Home Prod-*

ucts were governed by New York law while the insurance contracts at issue in the instant litigation arguably are governed by the law of Connecticut, Illinois, Michigan, New Jersey, New York and Pennsylvania. However, the portion of the *American Home Products* decision that found "unambiguous" the trigger-of-coverage provisions of the GCL was based not on New York law but on the court's reading of the actual policy language. A contrary interpretation of these provisions has not been adopted by the highest court of any of the states whose law arguably could apply to the contracts at issue here.[6]

Moreover, the principle that "[w]here, as here, the contract's language admits of only one reasonable interpretation, the court need not look to extrinsic evidence of the parties' intent or to rules of construction to ascertain the contract's meaning," *id.* at 765, is recognized by every state whose law might govern this litigation. *See, e.g., Leathermode Sportswear, Inc. v. Liberty Mutual Insurance Company,* 150 Conn. 63, 186 A.2d 79 (1962); *Menke v. Country Mutual Insurance Company,* 78 Ill.2d 420, 36 Ill.Dec. 698, 401 N.E.2d 539 (1980); *Vigil v. Badger Mutual Insurance Company,* 363 Mich. 380, 109 N.W.2d 793 (1961); *Kampf v. Franklin Life Insurance Company,* 33 N.J. 36, 161 A.2d 717 (1960); *Breed v. Insurance Company of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978); *Felte v. White,* 451 Pa. 137, 302 A.2d 347 (1973).

The evidence adduced by the parties as a result of extensive discovery is not incon-

---

**5.** It is clear that the district court and the Court of Appeals in *American Home Products* viewed an injury as a distinct event rather than as a continuous process extending over a prolonged period of time. Of course, a single exposure to a particular product may cause several different injuries at several different times. In such cases, an insurer would be responsible only for the injury or injuries that occurred during its period of coverage.

**6.** The decision of the Pennsylvania superior court in *Vale Chemical Company v. Hartford Accident and Indemnity Company,* 490 A.2d 896, *appeal granted,* 508 Pa. 603, 499 A.2d 576 (1985), does not, as Rorer contends, *see* Defendant William H. Rorer, Inc.'s Supplemental Memoran-

dum of Law in Support of its Post-Discovery Motion for Summary Judgment (filed Dec. 14, 1984), require a different decision with respect to insurance contracts arguably governed by Pennsylvania law. This court need not "slavishly follow lower ... [state] court decisions" and is free "to consider all the data the highest court of the state would use" in an effort to determine how that court would decide the issue. C. Wright, *Law of Federal Courts* § 58, at 373 (4th ed. 1983), *quoting Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 851 (2d Cir.1967); *see Commissioner v. Estate of Bosch,* 387 U.S. 456, 477, 87 S.Ct. 1776, 1788–89, 18 L.Ed.2d 886 (1967).

sistent with an "injury in fact" trigger of coverage. The parties have offered no clear evidence of any agreement or understanding between the defendant pharmaceutical companies and their insurers that liability coverage was to be triggered by anything other than the occurrence of an "injury in fact" during the policy period.[7] Indeed, the plaintiff now contends that its interpretation of the relevant policy language has always been "basically consistent with the holding of the Court of Appeals" in *American Home Products*. Aetna Memorandum at 5.

Accordingly, the court holds that the plaintiff and third-party defendants are required under their insurance policies with the defendants to pay all sums that the defendants have become or will become liable to pay as damages on account of injuries that occurred during the coverage periods of such policies as a result of exposure to DES. However, no such indemnification is required with respect to any injury that occurred before or after the coverage period of such policies.

## II.

The defendants also seek a declaration of the extent of the insurers' duty of defense under the GCL with respect to DES claims against their insureds. The relevant provision of the GCL states that the insurer "shall have the right and duty to defend any suit against the insured seeking damages on account of ... bodily injury or property damage [occurring within the coverage period], even if any of the allegations of the suit are groundless, false or fraudulent." *See, e.g.,* Defendant William H. Rorer, Inc's Joinder in Motion for Summary Judgment of Abbott Laboratories and The Upjohn Company (filed Feb. 3, 1983), Appendix A; Memorandum of Law in Support of Aetna's Motion for Summary Judgment as to Defendant Parke-Davis (filed Feb. 3, 1983), Appendix of Policies.

The Court of Appeals in *American Home Products* affirmed the district court's holding that the insurer was obligated to defend the pharmaceutical company "in every suit in which the complaint permits proof of facts establishing coverage, until [the insurer] is able to exclude the possibility of any recovery for which it provided insurance." 748 F.2d at 763, *citing* 565 F.Supp. at 1499–1500. There appears to be no dispute that the policy provisions concerning the duty of defense of the insurers in this action are virtually identical to the policy provisions that were before the Court of Appeals in *American Home Products*. [8]

Moreover, the parties do not dispute the general principle that an insurer has a duty to defend a suit against the insured where the complaint states facts that appear to bring the injury within the policy coverage. *See Lee v. Aetna Casualty & Surety Company,* 178 F.2d 750, 753 (2d Cir.1949) (L. Hand, C.J.) ("if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the [insurer] to undertake the defence [sic], until it could confine the claim to a recovery that the policy did not cover"). *See also Andover v. Hartford Accident & Indemnity Company,* 153 Conn. 439, 217 A.2d 60 (1966); *Conway v. Country Casualty Insurance Company,* 92 Ill.2d 388, 65 Ill. Dec. 934, 442 N.E.2d 245 (1982); *Detroit Edison Company v. Michigan Mutual Insurance Company,* 102 Mich.App. 136, 301 N.W.2d 832 (1980); *Danek v. Hommer,* 28 N.J.Super. 68, 100 A.2d 198 (1953), *aff'd* 15 N.J. 573, 105 A.2d 677 (1954); *Gedeon v. State Farm Mutual Automobile Insurance Company,* 410 Pa. 55, 188 A.2d 320 (1963).

The pharmaceutical companies are therefore required by *American Home Products* to bear the initial burden of pro-

---

**7.** The extensive discovery conducted by all parties distinguishes this case from *Schering Corporation v. Home Insurance Company,* 712 F.2d 4 (2d Cir.1983) (summary judgment was inappropriate in action seeking interpretation of GCL because discovery had not been substantially completed).

**8.** *See* note 4, *supra.*

ducing evidence that the complaint permits proof that the alleged DES-related injury occurred during the coverage period of the policy. The burden then shifts to the insurer to prove, by a preponderance of the evidence, that any such injury could not have occurred within the policy period.

The district court was found not to have abused its discretion in *American Home Products* by concluding that "the question of when injury in fact occurred [as a result of exposure to DES and five other drugs] is not amenable to mass resolution but must be determined in each case with specific reference to, *inter alia*, the nature of the injury claimed and the nature of the drug alleged to have caused it." 748 F.2d at 677. This court concurs that a particularized determination of the time of DES injury ought to be obtained whenever that issue is capable of resolution in the course of pending or future litigation.[9]

Accordingly, the court holds that the plaintiff and third-party defendants are required to bear the costs of defense of each lawsuit against the defendants in which the complaint could be read to permit proof, or does not exclude the possibility of proof, that an injury in fact occurred during the

policy period as a result of exposure to DES.[10] The insurers cannot be relieved of their duty of defense unless and until they confine a particular claim so as to exclude the possibility of a recovery for which they have provided insurance. The issue of whether an insurer has so confined any particular claim shall be determined, in pending or future cases, by the court before which each case is brought based upon the facts developed in each suit.

### III.

The pharmaceutical companies in this action, unlike their counterpart in *American Home Products*, also seek damages for the alleged failure of the insurers to meet their duty of defense with respect to claims that have been settled or otherwise terminated prior to trial.[11] The time of occurrence of the DES-related injuries that were the subject of these claims cannot be decided in any underlying litigation. It is therefore appropriate for this court to attempt to determine whether and to what extent the insurers may have breached their duty of defense in these closed cases.[12]

Accordingly, the parties to this litigation are hereby directed to confer with one an-

9. As Judge Sofaer noted in *American Home Products, supra*, 565 F.Supp. at 1509, after "a manufacturer's product has been established to injure in a particular manner, or at an identifiable time, courts may be free to rule in all similar cases that the product caused the injury and/or that it did so at the time identified."

10. The parties have thus far presented no evidence that would permit the court to make a determination as to when particular DES-related injuries might have occurred. It is possible that some DES-related injuries were sustained by the fetus shortly after its exposure to the drug. It is also possible that some DES-related injuries will not occur until decades after exposure. Accordingly, at least until the courts have established guidelines with respect to when various DES-related injuries may be said to occur, *see* part III, *infra*, each insurer whose policy was in effect from the date of the claimant's initial exposure to DES through the date of manifestation of the alleged injury has the duty to defend its insured until a court excludes the possibility that the alleged injury occurred during its policy period.

11. It is apparently not disputed that the insurers would be liable for damages if the court were to

find that they had breached their duty of defense. *See, e.g.*, Certified Official Transcript of Oral Argument of April 27, 1983 (filed May 13, 1983) (counsel for Aetna concedes that "if the Court finds we breached our duty to defend, then we are responsible for the defense costs and we also cannot complain if the case was settled in a reasonable manner, we have to pay that indemnification").

12. The court declines at this time to adopt the argument of Parke-Davis that, because the medical etiology of DES-related injuries may be unclear, all insurers whose policies were in effect from the date of initial exposure to DES through the date of ultimate manifestation of injury ought to be held to have breached their duty of defense in all of the closed cases. *See* Parke-Davis Memorandum at 8–10. It would be inappropriate for a court effectively to adopt a variant of the "continuous injury" theory that was rejected in *American Home Products, supra*, at least while the possibility remains of establishing whether or not the complaints in the closed cases permitted proof of an injury that occurred within the relevant policy periods.

other by no later than February 28, 1986, to formulate a proposed procedure and timetable for the court's resolution of the liability and damages issues in all closed cases. Any such proposal shall address, *inter alia,* the following questions: (1) What information is available with respect to the closed cases? (2) What types of DES-related injuries were alleged in these cases? (3) How much discovery may be required prior to an evidentiary hearing with respect to the closed cases? (4) What is the nature and extent of the evidence that the parties will seek to present at such a hearing? (5) What has been the experience of any other courts that have conducted similar proceedings? (6) What other issues, if any, remain to be resolved in this action? The parties shall submit their proposal or proposals to the court by no later than March 10, 1986.[13]

### Conclusion

For the foregoing reasons, the court finds that (1) the plaintiff and third-party defendants are required under their insurance policies with the defendants to pay all sums that the defendants have become or will become liable to pay as damages on account of DES-related injuries that occurred during the coverage periods of such policies; (2) the plaintiff and third-party defendants are required to bear the costs of defense of each lawsuit against the defendants in which the complaint could be read to permit proof, or does not exclude the possibility of proof, that an injury in fact occurred during the policy period as a result of exposure to DES; (3) the issue of whether the plaintiff and third-party defendants have confined a particular claim so as to exclude the possibility of an injury within the coverage period shall be determined, in pending or future cases, by the court before which each case is brought based upon the facts developed in each suit; and (4) this court shall attempt to determine whether and to what extent the plaintiff and third-party defendants may

have breached their duty of defense in cases that have already been settled or otherwise terminated prior to trial. The parties shall submit to the court by no later than March 10, 1986, their recommendations for resolving the remaining issues in this litigation.

It is so ordered.

---

13. It would be preferable for all parties to agree to a single proposal prior to its submission to the court. If no such agreement is possible, one proposal shall be submitted by liaison counsel for the insurers and one by liaison counsel for the pharmaceutical companies.