**ABEX CORPORATION**

v.

**MARYLAND CASUALTY COMPANY, et al. Liberty Mutual Insurance Company, Appellant.**

**ABEX CORPORATION**

v.

**MARYLAND CASUALTY COMPANY, Appellant Liberty Mutual Insurance Company, et al.**

**ABEX CORPORATION**

v.

**MARYLAND CASUALTY COMPANY, et al. Liberty Mutual Insurance Company, Appellant.**

Nos. 85–5602, 85–5659 and 85–5660.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 21, 1986.

Decided May 9, 1986.

Margaret H. Warner, with whom Lawrence E. Carr, Jr., Washington, D.C., was on brief for Travelers Indem. Co., appellant in Nos. 85–5659, 85–5660 and 85–5602.

Gerald V. Weigle, Jr., Cincinnati, Ohio, with whom Frank W. Gaines, Jr., New York City, was on brief for Liberty Mut. Ins. Co., appellant in Nos. 85–5602, 85–5659 and 85–5660.

William A. Bradford, Jr., with whom Thomas W. Brunner and Jeffrey F. Liss, Washington, D.C., were on brief for Maryland Cas. Co., appellant in Nos. 85–5602, 85–5660 and 85–5659.

Jerold Oshinsky, with whom Robert H. Shulman and David M. Halbreich, Washington, D.C., were on brief for appellee in Nos. 85–5602, 85–5659 and 85–5660. Judith Hall Howard, Washington, D.C., also entered an appearance for appellee in Nos. 85–5602, 85–5659 and 85–5660.

Before WRIGHT, EDWARDS and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Comprehensive General Liability ("CGL") policy is a standard liability-insurance policy that, with only rare exception, is routinely used by the insurance industry in the United States. Under this policy an insurer must indemnify the insured for "all sums which the insured shall be legally obliged to pay as damages because of ... bodily injury ... caused by an *occurrence.* "[1] The insurer is additionally obligated to defend any suit against the insured to recover damages "on account of such injury ... even if any of the allegations of the suit are groundless, false or fraudulent." [2]

This case involves a now commonplace dispute between an asbestos manufacturer and several insurance companies over the interpretation of the standard CGL policy in the context of asbestos-induced disease. It is an "occurrence" that triggers the insurer's liability. However, because the onset of asbestos-induced disease is difficult to pinpoint, the parties in this case have differing views on when an insurer's duties to indemnify and defend are "triggered" under the CGL policy. The resolution of this dispute therefore requires us to interpret the definition of "occurrence" in the CGL policy.[3]

Abex Corporation, a brake-lining manufacturer whose products at one time contained asbestos, brought this action in the United States District Court for the District of Columbia seeking declaratory judgment that several insurance companies have obligations under the CGL policy to defend and indemnify Abex in over 200 pending asbestos tort actions. The parties have stipulated that this case is governed by New York law. The District Court granted Abex partial summary judgment and held that the insurers "are obliged to defend and pay for the asbestos claims and lawsuits against Abex and to pay its defense costs in accordance with" this circuit's decision in *Keene Corp. v. Insurance Co. of North America.* [4] *Keene,* however, did not specifically interpret the CGL policy under New York law. At issue on appeal is whether *Keene* is consistent with New York law.

As a starting point in our review of this case, we first consider the Second Circuit's opinion in *American Home Products Corp. v. Liberty Mutual Insurance Co.*[5], in which the court construed the definition of "occurrence" under New York law. The New York Court of Appeals has yet to grapple with the issue; therefore, under general notions of comity within the federal judicial system, we are obliged to respect the Second Circuit's interpretation of New York law absent clear error. Because we can find no such clear error, and because *Keene* is inconsistent with both *American Home Products* and our own reading of the insurance contracts, we adopt the *American Home Products* interpretation that the insurer's obligation to indemnify Abex arises when the asbestos causes real bodily injury during the policy period. Under this view, the injury need not be compensable or diagnosable during the policy period if its existence during that period can be proved in retrospect.

We remand the case to the District Court for further proceedings on the insurers' duty to indemnify Abex under the so-called "injury-in-fact" trigger as specified in *American Home Products.* We further

---

1. Comprehensive General Liability Policy (1966) (emphasis added), cited in *Insurance Co. of N. Am. v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212, 1216 (6th Cir.1980), *clarified,* 657 F.2d 814 (6th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981).

2. *Id.*

3. Under the CGL policy, occurrence is defined as

an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
*Id.*

4. 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

5. 748 F.2d 760 (2d Cir.1984).

conclude that the insurers have a duty to defend Abex in all cases in which the complaint "permits proof" of facts establishing coverage. Only if the insurers establish *as a matter of law* that there is no possibility of coverage can they avoid their duty to defend Abex. We therefore hold that the insurers have an immediate duty to defend Abex in its asbestos cases until they present positive proof that no coverage is possible.

Finally, we hold that Maryland Casualty Company has no duty to indemnify or defend Abex until the District Court expressly determines that Abex was covered by Maryland Casualty Company policies.

## I. BACKGROUND

Abex is a manufacturer engaged in the sale and distribution of brake-linings for railroad cars, automobiles, trucks and industrial machinery. These products once contained asbestos and, as a result, Abex is now a defendant in over 200 asbestos tort cases. Although Abex was insured between 1943 and 1974 by successive CGL policies issued by Maryland Casualty Company ("Maryland"),[6] Travelers Insurance Company ("Travelers"), and Liberty Mutual Insurance Company ("Liberty"), these insurers have refused to defend or indemnify Abex in all but one of Abex's asbestos cases.

For the most part, all of the insurers have adopted identical language from the standard CGL policy in defining their obligations to Abex. Under the CGL policy, the insurers are obliged to indemnify Abex for all damages that result from

bodily injury or property damage to which this policy applies caused by an occurrence....[7]

An "occurrence" is defined as

an accident, including injurious exposure to conditions, which results, during the

policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.[8]

In addition to its duty to indemnify Abex, the insurers are obliged

to defend any suit against the insured seeking damages on account of such injury or damage, even if any of the allegations of the suit are groundless, false or fraudulent....[9]

While all of Travelers' policies—covering Abex from March 1, 1971, until March 1, 1974—are involved in this case, only eight of the sixteen Liberty policies are at issue. The Liberty policies covered Abex from January 1, 1966, through January 1, 1970, and from August 1, 1957, through August 1, 1961. Although in most relevant respects the Liberty and Travelers policies are identical, the Liberty policies include two additional provisions not usually found in CGL policies. Both of these provisions could significantly alter Liberty's duty to indemnify Abex. First, the 1957–1960 Liberty policies include a so-called "deemer clause."[10] It provides:

The policy applies only to personal injury and property damage which occur during the policy period any where in the world; *provided personal injury or property damage caused by exposure to injurious conditions over a period of days, weeks, months or longer shall be deemed to occur only on the last day of exposure to such injurious conditions.* Personal injury or property damage caused by such continuous or repeated exposure for which written claim is made against the insured during the policy period shall be deemed to occur only on the last day of the last exposure prior to the date such claim is made. Subject to the foregoing provisions, the policy does not apply to such personal injury or property damage caused by such continuous or

---

6. As will be discussed in Part IIC, *infra*, Maryland disputes that it insured Abex during the years alleged.

7. Comprehensive General Liability Policy, note 1 *supra.*

8. *Id.*

9. *Id.*

10. This provision is called a deemer clause because it *deems* when injury occurs.

repeated exposure, any part of which occurs after the policy period.[11]

Second, although the 1966–1970 Liberty contracts do not include this deemer clause, they too include a unique provision—the so-called "other insurance" provision:

> The insurance afforded by this policy does not apply to that portion of the loss for which the insured has other valid and collectible insurance, whether on a primary, excess or contingent basis.[12]

The Maryland policies at issue allegedly covered Abex during 1953–1954 and 1956–1957. Maryland, however, denies that it insured Abex during those years, and submitted affidavits contending that Maryland was unable to find any record of these policies in its files. Abex produced copies of these policies, but their authenticity is hotly contested by Maryland. Although the Maryland policies are much older than the version of the CGL policy used by the other carriers, the policies provide the same duty to defend and to indemnify as that found in the Travelers and Liberty policies, and use only slightly different language than the standard CGL policy:

> This policy applies only to occurrences which result in injury during the policy period....[13]

Maryland does not contest that, if it insured Abex, its duty to indemnify is exactly the same as that arising from the version of the CGL policy applicable to Liberty and Travelers.

After the insurers refused to defend Abex in the tort actions, Abex brought this action for declaratory judgment in July 1982. The insurers' motion to transfer this action to the Southern District of New York was denied by the District Court. Abex filed a motion for partial summary judgment on December 6, 1982, seeking to require the insurers to undertake immediately their defense and indemnity obligations. Almost two and a half years later, on April 16, 1985, the District Court granted Abex's motion in full with the following order:

> Under consideration of the motion of plaintiff, Abex Corporation, for partial summary judgment and the statements of points and authorities in support thereof and in opposition thereto, and the entire record herein, it is hereby
>
> ORDERED that,
>
> 1. Plaintiff's motion for partial summary judgment is granted in all respects.
>
> 2. Defendant Maryland Casualty Company, under policy numbers 96–026450 and 96–105310, defendant Liberty Mutual Insurance Company, under policy numbers LP6021–904327–37, LP6021–904327–38, LP–1–621–004078–040, LP1–621–004078–046, LG1–621–004078–047, LG1–621–004078–048, LG1–621–004078–049, and LG1–621–004078–319, and defendant Travelers Indemnity Company, under policy number TRNSL–957500–71, are obliged to defend and pay for the asbestos claims and lawsuits against Abex and to pay its defense costs in accordance with the decision in *Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007 [102 S.Ct. 1644, 71 L.Ed.2d 875] (1982).
>
> 3. Upon the express finding that there is no just reason to delay, and pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court directs the entry of this order as a final judgment.[14]

This appeal followed.

---

**11.** Liberty Mutual Insurance Policy (emphasis added), *reprinted in* Record Excerpts Submitted by Liberty Mutual Insurance Company ("R.E.") 41.

**12.** R.E. 45. The 1966 policy uses different language:

> If the insured has other insurance against a loss covered by this policy, the insurance afforded by this policy shall be excess insurance over and above any other valid and collectible insurance available to the insured.

R.E. 41.

**13.** Maryland Casualty Company Policy, *reprinted in* Record Excerpts Submitted by Appellee Abex Corporation 13.

**14.** *Abex Corp. v. Maryland Casualty Co.*, Civil Action No. 82–2098 (D.D.C. April 16, 1986) (order), *reprinted in* R.E. 9–10.

## II. ANALYSIS

### A. *The Trigger*

The central and dispositive issue on appeal is the meaning of the word "occurrence" as defined in the CGL policy used by the insurers in this case. Our interpretation of the word "occurrence" will, in turn, determine what event or events will "trigger" the insurers' duties to defend and indemnify Abex. The courts that have addressed this issue have come to significantly different conclusions. Some courts, for example, have held that the insurers' obligations under the CGL policy are triggered only when an injury is manifest during the policy period.[15] Others hold that liability is triggered by mere exposure to the harmful conditions during the policy period.[16] In *Keene Corp. v. Insurance Company of North America,*[17] we addressed this very issue and concluded "that inhalation exposure, exposure in residence, and manifestation *all* trigger coverage under the policies.... [and that] 'bodily injury' ... mean[s] any part of the single injurious process that asbestos-related diseases entail."[18]

Under the mandate of *Erie Railroad Co. v. Tompkins,*[19] however, our obligation in a diversity action such as this one is to interpret and apply *state* law—in this case, the law of New York. In *Keene,* we did not purport to apply the law of New York—nor did we even explicitly apply the law of any single state. Instead, because we determined that none of the states whose law was arguably applicable had addressed specifically the issue in dispute, we applied "the basic principles governing the interpretation of insurance policies,"[20] in interpreting the CGL policy. *Keene,* therefore, does not necessarily identify the correct interpretation of the CGL policy under New York law. As we concluded in *Eli Lilly & Co. v. Home Insurance Co.,*[21] "*Keene* is relevant only insofar as we determine that the [state] courts would adopt it."[22] Indeed, in *Eli Lilly,* this court cited New York law as an example of a state whose law is possibly inconsistent with *Keene.*[23] We must therefore look specifically to the law of New York.

Fortunately, we are not without guidance. This is one of the rare instances in which a sister circuit has provided an unambiguous answer to our inquiry. In *American Home Products Corp. v. Liberty Mutual Insurance Co.,*[24] Judge Sofaer explicitly rejected the *Keene* multiple trigger as inconsistent with New York law, and instead adopted an "injury-in-fact" trigger. As modified on appeal by the Second Circuit, insurance obligations under the CGL policy arise when real injury occurs during the policy period. Real injury need not have been compensable or diagnosable during the policy period if its existence during that period can be proved in retrospect. Thus, unlike the approach in *Keene,* under the injury-in-fact trigger the central issue is when injury *actually* oc-

---

15. *See, e.g., Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.,* 523 F.Supp. 110 (D.Mass.1981), *modified,* 682 F.2d 12 (1st Cir.1982) (as modified, insurance coverage is triggered when "asbestos-related disease became reasonably capable of medical diagnosis"), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983).

16. *See, e.g., Porter v. American Optical Corp.,* 641 F.2d 1128, 1145 (5th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). For a detailed study of the various approaches used to solve this problem, *see* Note, *Adjudicating Asbestos Insurance Liability: Alternatives to Contract Analysis,* 97 HARV.L.REV. 739 (1984).

17. 667 F.2d 1034 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

18. *Id.* at 1047 (emphasis added).

19. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

20. 667 F.2d at 1041 n. 10. We further noted that these principles "are the same in each state." *Id.*

21. 764 F.2d 876 (D.C.Cir.1985).

22. *Id.* at 883.

23. *See id.* at 880.

24. 565 F.Supp. 1485 (S.D.N.Y.1983), *aff'd as modified,* 748 F.2d 760 (2d Cir.1984).

curred. Injury need not be manifest, but it must exist in fact. According to Judge Sofaer, the *plain meaning* of the definition of "occurrence" in the CGL policy mandates that the insurers' obligations to indemnify the insured arise when real injury occurs during the policy period. Under New York law, extrinsic evidence of intent is admissible only if a contract provision is susceptible of at least two fairly reasonable meanings.[25] Because Judge Sofaer concluded that the plain meaning of the definition of occurrence permits only the injury-in-fact trigger, he looked to extrinsic evidence of the parties' intent only to confirm his analysis of the plain language of the contracts.[26]

We will follow the *American Home Products* interpretation of the CGL policy under New York law. As Judge Newman wisely concluded in *Factors Etc., Inc. v. Pro Arts, Inc.*,[27]

Where, as here, the pertinent court of appeals has essayed its own prediction of the course of state law on a question of first impression within that state, the federal courts of other circuits should defer to that holding, perhaps always, and at least in all situations except the rare instance when it can be said with conviction that the pertinent court of ap-

peals has disregarded clear signals emanating from the state's highest court pointing toward a different rule.[28]

The application of a contract interpretation different than that adopted by the Second Circuit would create the oddity of a split in the circuits over the correct application of New York law. The evils of forum shopping, which the *Erie* doctrine is designed in part to prevent, could only be exacerbated by such a split over an issue of state law. It seems obvious, for example, that this case was brought in the District Court for the District of Columbia because the holding in *Keene* is favorable to Abex. Furthermore, it is fair to assume that the circuit with jurisdiction over the state whose law is in question will inevitably have a better sense of the applicable state law than that of our own. The holding of a "home" circuit is especially strong when, as here, it substantially adopts the reading of state law offered by a district court in the pertinent state.[29]

For these reasons, we will defer to the local circuit's view of the law of a state in its jurisdiction when that circuit has made a reasoned inquiry into state law, unless we are convinced that the court has ignored clear signals emanating from the state

**25.** *See American Home Products,* 748 F.2d at 765.

**26.** Judge Sofaer also mentioned several reasons why *Keene* is inconsistent with New York law. First, although the doctrinal basis for *Keene* was the reasonable-expectations doctrine, "New Hampshire appears to be the only state that adheres to the reasonable-expectations doctrine; no state law arguably applicable in this case would permit reliance upon the doctrine in connection with unambiguous passages." *American Home Products,* 565 F.Supp. at 1511. Second, *Keene* ignored the doctrine that, "[u]nder New York law ... a court should apply its own construction to a policy's terms only *after* it has exhausted every effort to derive the meaning of the terms that accurately reflects the intent of the parties." *Id.* at 1492. Finally, Judge Sofaer rejected "manifestation" and "exposure" triggers as inconsistent with the plain meaning of the definition of occurrence. The definition requires that there be *injury* during the policy period and not mere exposure. *See id.* at 1494–95.

**27.** 652 F.2d 278 (2d Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982).

**28.** *Id.* at 283. Several other courts have followed Judge Newman's lead. *See Hammermill Paper Co. v. Pipe Sys., Inc.,* 581 F.Supp. 1189, 1193 (W.D.Pa.1984); *Alcan Aluminum Ltd. v. Franchise Tax Bd.,* 539 F.Supp. 512, 514–15 (S.D. N.Y.1982).

**29.** We note that federal courts often have given deference to district court interpretations of state law. "The rationale behind such deference is that a district court judge, who sits in a particular state and has practiced before that state's courts, can better decide questions of unsettled state law than a circuit court judge, who frequently lacks such experience." Note, *Deference to Federal Circuit Court Interpretations of Unsettled State Law: Factors Etc., Inc. v. Pro Arts, Inc.,* 1982 DUKE L.J. 704, 711.

courts.[30] Only when we are certain that the pertinent circuit has *clearly misread* state law would it make sense to reject that circuit's view of state law. In such a case, our adoption of a clearly incorrect reading of state law would do nothing to prevent forum shopping. Litigants would still choose a federal forum whenever the circuit's reading of state law is more favorable than that actually adopted by state courts. We are convinced, however, that such a clear misreading of state law will rarely occur.

We are confident from our examination of the applicable case law of New York that the Second Circuit has not disregarded clear signals emanating from the New York courts. Indeed, several New York decisions cast doubt on the *Keene* approach by rejecting exposure as a sufficient basis for the triggering of coverage under the CGL policy. In *American Motorists Insurance Co. v. E.R. Squibb & Sons, Inc.,*[31] for example, a New York trial court suggested that an *injury*—and not mere exposure—must occur during a policy period:

A reading of the [CGL] policy language would appear to indicate that coverage is predicated not on the act which might give rise to ultimate liability, but upon the result. It would be a strained interpretation to construe the occurrence clause as though it covered "exposure during the policy period which results in bodily injury." It is the *result* which is keyed to the period, and not the accident or exposure.[32]

Similarly, the Appellate Division concluded that exposure after initial injury that *"aggravated existing injuries or caused additional injuries"* also triggered coverage.[33] Clearly, these cases do not offer an unambiguous embrace of the injury-in-fact approach, but they are far more consistent with the injury-in-fact trigger than with the multiple trigger adopted by *Keene* and the manifestation theory adopted by other courts.[34]

Furthermore, *American Home Products* is more consistent with our own reading of the insurance contracts than is *Keene*.[35]

30. *See id.* at 726–27 (suggesting such a rule of deference). Obviously, we will not blind ourselves to state court decisions handed down *after* the circuit court opinion in question.

31. 95 Misc.2d 222, 406 N.Y.S.2d 658 (Sup.Ct. 1978).

32. 95 Misc.2d at 223–24, 406 N.Y.S.2d at 659–60; *see also Van Wyck Assocs. v. St. Paul Fire & Marine Ins. Co.,* 115 Misc.2d 447, 450–51, 454 N.Y.S.2d 266, 269 (Sup.Ct.1982) ("coverage is not upon the act or conditions during the period of existence of the policy which might give rise to ultimate liability, but rather upon the 'result' thereof taking place during said policy period of existence"), *aff'd,* 95 A.D.2d 989, 464 N.Y.S.2d 617 (1983).

33. *Autotronic Sys., Inc. v. Aetna Life & Casualty Co.,* 89 A.D.2d 401, 456 N.Y.S.2d 504, 506 (1982) (emphasis added). Only one New York trial court decision is at variance with the otherwise uniform rejection of the exposure theory by the New York courts. In *All-State Ins. Co. v. Colonial Realty Co.,* 121 Misc.2d 640, 468 N.Y.S.2d 800 (Sup.Ct.1983), the court used the exposure theory as grounds to deny an insurer's motion for summary judgment in a case involving the duty to indemnify the insured for an infant's lead poisoning. 121 Misc.2d at 641, 468 N.Y.S.2d at 801–02. One lower court decision, however, does not a "clear signal" make, especially in light of the strong doubt expressed by other courts about the exposure theory.

34. *See, e.g., Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.,* 682 F.2d 12 (1st Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983).

35. We recognize that implicit in the discussion in *Keene* was a finding that the CGL policy is ambiguous and has no "plain meaning." The central basis for the *Keene* holding, however, was the panel's conclusion that their central objective "must be to give effect to the policies' dominant purpose of indemnity." 667 F.2d at 1041. As Judge Sofaer noted explicitly, this conclusion cannot be reconciled with New York law. *See American Home Products,* 565 F.Supp. at 1510–11. Instead, under New York law "intent remains controlling," *id.* at 1492, and thus a court must not jump too readily to a conclusion that a contract has no plain meaning. As Judge Sofaer explained "[t]o disregard express language in an insurance contract because of a claimed ambiguity 'would violate the more fundamental rule of construction' that requires a court to construe the contract as a whole and whenever possible, give effect to all its parts." *Id.* at 1510 (quoting *Spencer, White & Prentis, Inc. v. Pfizer, Inc.,* 498 F.2d 358, 363 n. 23 (2d Cir.1974)). It is this more expansive view of "plain meaning" under New York law that we must—and do—follow in this case.

The plain language of the definition of "occurrence" used in the CGL policy requires exposure that "results, *during the policy period*, in bodily injury" in order for an insurer to be obligated to indemnify the insured. The unambiguous meaning of these words is that an *injury* —and not mere exposure—must result *during the policy period*. The CGL policies expressly distinguish exposure from injury; to equate the two as urged by Abex is to ignore this distinction. Any argument that mere exposure—without injury—triggers liability is simply unsound linguistically. Additionally, the manifestation theory, too, is inconsistent with the definition of "occurrence." Although the language of these policies demands that the insured prove that an exposure caused an injury during the policy period, it imposes no requirement that the injury be discovered at that time.

### B.  *Application of the Trigger*

#### 1.  *Duty to Indemnify*

■ Because we adopt the injury-in-fact trigger as most consistent with New York law, summary judgment on the question of the insurers' duty to indemnify is not appropriate in this case. It may be, as suggested by Abex, that in the context of asbestos cases, injury occurs simultaneously with exposure.[36] The record below is devoid of evidence on when asbestos-induced injury occurs, however, and the inescapable dispute of fact over this issue prevents summary judgment. The CGL policy requires that real injury occur during the policy period before an insurer is obligated to indemnify an insured, and thus makes the existence of injury a material issue of fact. We therefore remand for further proceedings in the District Court on the insurers' duty to indemnify under the injury-in-fact trigger.

On remand, there will be no need for the District Court to examine extrinsic evidence on intent. In *American Home Products*, the court adopted the injury-in-fact trigger as mandated by the plain meaning of the definition of "occurrence" in the CGL policy. We adhere to this view. The contract language here is susceptible of only one reasonable interpretation; therefore, under New York law, extrinsic evidence of intent is irrelevant.[37]

---

**36.**  The Sixth Circuit assumed as much in adopting the exposure theory:

[T]he medical testimony is not in dispute. Asbestosis is a slowly progressive disease. Injury, in the sense that there is tissue damage, occurs shortly after the initial inhalation of asbestos fibers. It was because of this early tissue damage that the district court concluded that the insurance companies would be liable from the date of a worker's initial exposure to asbestos. The district court thus equated the "bodily injury" which is covered by the insurance policies with the development of the tiny, scarlike tissue in the victim's lungs. Because each additional inhalation of asbestos fibers results in the build-up of additional scar tissue in the lungs, the district court deemed the "bodily injury" to occur whenever asbestos fibers were inhaled.

*Insurance Co. of N.Am v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1218 (6th Cir.1980), *clarified*, 657 F.2d 814, *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). This view of the medical evidence, however, is not accepted universally. The First Circuit, for example, contended that

it is uncontested that even sub-clinical injury to the lung does not occur simultaneously with the inhalation of asbestos. Nor is the existence of sub-clinical injury an inevitable by-product of exposure, since the body's natural mechanisms may remove the fibers before they become embedded in the lungs.

*Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 19 (1st Cir.1982), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983). This "split in the circuits" over the etiology of asbestos-induced diseases simply confirms our conclusion that summary judgment is not appropriate.

**37.**  *American Home Products*, 748 F.2d at 765 ("Where, as here, the contract's language admits of only one reasonable interpretation, the court need not look to extrinsic evidence of the parties' intent or to rules of construction to ascertain the contract's meaning.").

In *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4 (2d Cir.1983), the Second Circuit reversed a summary judgment in order to permit the introduction of extrinsic evidence in a case involving the same contract language at issue in *American Home Products*. The *Schering Corp.* court held that summary judgment was inappropriate because one of the parties had presented extrinsic evidence supporting an alternative, "reasonable" interpretation of the CGL contract. The *Ameri-*

The principal task for the District Court on remand will be to determine when injury-in-fact occurred. As Judge Sofaer observed, the trier of fact need not pinpoint the exact date of injury. Instead, "all that is necessary is reasonably reliable evidence that the injury, sickness, or disease more likely than not occurred during a period of coverage." [38] Once the court determines that asbestos exposure causes injury at a particular time and in a particular manner, it may be appropriate to apply these findings to *all* similar cases.[39] Such an approach would avoid the need for repetitive minitrials on this issue for each of the tort claims against Abex. However, we will leave this matter for assessment by the District Court in the first instance.

Finally, the District Court must consider the applicability of the "deemer" clauses and "other insurance" clauses in the Liberty policies. Although these provisions could significantly affect Liberty's duty to indemnify Abex, there is no mention of these clauses in the District Court's order. The deemer clause, for example, provides that injury caused by exposure to injurious conditions is deemed to occur on the last day of exposure. This *could* be read to eliminate Liberty's duty to indemnify Abex for injuries caused by exposure that ceased before the beginning of Liberty's policy period, as well as injuries caused in part by exposure occurring after the expiration of the Liberty policy. Unfortunately there is no Second Circuit interpretation of these two contract provisions,[40] so we must leave the task of interpreting these provisions to the District Court. The District Court must first determine if these provisions have a plain meaning. If they are susceptible of at least two fairly reasonable meanings, under New York law the court must then examine any extrinsic evidence.[41] Only "after all aids to construction have been employed but have failed to resolve the ambiguities" should the court apply the maxim that ambiguities are to be construed against the insurer.[42]

### 2. The Duty to Defend

Although the issues surrounding the insurers' duty to indemnify Abex cannot be resolved on a motion for summary judgment, the same is not true with respect to the duty to *defend* Abex. Under well-settled principles of New York law, Abex is entitled to defense by the insurance companies if the underlying tort complaints "permit proof" of the facts establishing coverage, or if the complaints do not exclude the

can Home Products court purported to distinguish *Schering Corp.* on the ground that none of the alternative interpretations urged in *American Home Products* were reasonable. We simply do not understand this distinction; in our view, the interpretations urged in *Schering Corp.* differ little from those in *American Home Products.* Because the latter case is the most recent and better reasoned decision, we view it as the best reading of New York law. We can only comprehend *American Home Products* as a *sub silencio* overruling or modification of *Schering Corp.*

It is also worthy of note that the "reasonable" interpretation of the CGL contract that led the *Schering Corp.* court to refuse summary judgment seems to be the very injury-in-fact trigger adopted in *American Home Products. See Schering Corp.,* 712 F.2d at 9 ("[the CGL draftsmen] both claimed that ... they contemplated coverage for injuries which occur, rather than become manifest during the policy period."). What is curious about *Schering Corp.* is that this "reasonable" interpretation is not seen by the court as required by the plain meaning of the contract as was found in *American Home Prod-*

ucts. As noted hereinabove, we find the plain meaning analysis of *American Home Products* to be the correct one.

**38.** *American Home Products,* 565 F.Supp. at 1509.

**39.** *Id.*

**40.** Judge Sofaer addressed a provision similar to the deemer clause in *American Home Products.* It provided:

The policy does not apply to such injury, death or destruction caused by such continuous or repeated exposure any part of which occurs after the termination of the policy. 565 F.Supp. at 1489. The deemer clause's language, however, differs significantly from the provision at issue in *American Home Products.*

**41.** *See American Home Products,* 748 F.2d at 765.

**42.** *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 10 n. 2 (2d Cir.1983).

possibility that injury-in-fact occurred during the policy period.[43] Only if the insurers establish, *"as a matter of law,* that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify,"[44] would they escape their duty to defend Abex. Recently, a New York trial court applied these principles and granted an insured summary judgment on the duty to defend when the insurers "failed to establish that there is no possible factual or legal basis on which they might eventually be obligated to indemnify [the insured] against liability."[45] Summary judgment is also appropriate in this case because the insurers here too have failed to establish that no coverage is possible as a matter of law.

As we concluded above, indemnification is triggered by injury-in-fact. Thus, as long as there remains a possibility—however remote—that injury occurred during the policy periods of each insurer, the insurers must defend Abex.[46] Because it is possible for asbestos-induced injuries to occur at any time following initial exposure, the tort complaints against Abex "permit proof" that the injury-in-fact occurred during the policy periods of all three insurers. We hold, therefore, that the insurers must immediately fulfill their duty to defend Abex. This obligation will continue until the insurers establish that, as a matter of law, there is no possibility that they will have to indemnify Abex.[47]

## C. *Maryland Insurance*

Although we hold that Travelers and Liberty have a duty to defend Abex, we are presently unable to make any such determination with respect to Maryland. Before the District Court imposes any duty on Maryland, it must first determine that Maryland insured Abex for the years claimed. Under New York law, Abex has

**43.** *See American Home Products,* 565 F.Supp. at 1499–1500; *see also Klein v. Salama,* 545 F.Supp. 175, 177 (E.D.N.Y.1982) ("if [complaints] assert facts which raise the possibility of recovery, however remote, the insurer has an obligation to defend"); *Seaboard Surety Co. v. Gillette Co.,* 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984) ("the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased").

**44.** *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.,* 64 N.Y.2d 846, 848, 487 N.Y.S.2d 314, 315, 476 N.E.2d 640, 641 (1985) (emphasis added); *see also Servidone Constr. Corp. v. Security Ins. Co. of Hartford,* 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (1985) ("A declaration that an insurer is without obligation to defend a pending action could be made 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'") (quoting *Spoor-Lasher Co. v. Aetna Casualty & Surety Co.,* 39 N.Y.2d 875, 876, 386 N.Y.S.2d 221, 222, 352 N.E.2d 139, 140 (1976)); *Penn Aluminum, Inc. v. Aetna Casualty & Surety Co.,* 61 A.D.2d 1119, 1119, 402 N.Y.S.2d 877, 878 (1978) (same).

So far as we can determine, only one case deviates from the analysis in test. In *Olin Corp. v. Insurance Co. of N. Am.,* 603 F.Supp. 445, 448–49 (S.D.N.Y.1985), the district court refused to grant summary judgment on the duty to defend because there was insufficient evidence that the occurrence took place during the policy period. However, as the prevailing case law—both state and federal—makes clear, the *Olin* case is simply inconsistent with New York law.

**45.** *Technicon Elecs. Corp. v. American Home Assurance Co.,* No. 85–08811, slip op. at 4 (N.Y. Sup.Ct. Feb. 18, 1986).

**46.** In *American Home Products,* this reasoning was applied to hold that an insurer must defend the insured until the *insurer* "has 'confined the claim' in any underlying case." 565 F.Supp. at 1550. Similarly in *Aetna Casualty & Surety Co. v. Abbott Laboratories,* 636 F.Supp. 546 (D.Conn. 1986), Judge Cabranes held that the insurers were required to defend the insured's DES suits "unless and until they confine a particular claim so as to exclude the possibility of a recovery for which they have provided insurance." Slip op. at 10.

**47.** Again, the District Court must consider the relevance of the "deemer" and "other-insurance" clauses to Liberty's duty to defend. Before Liberty's duty to defend ceases, however, *it* must establish that, *as a matter of law,* these provisions preclude coverage. Liberty, for example, must first establish that it is an excess insurer under the facts of a particular tort case before refusing to fulfill its duty to defend. Only when the court determines conclusively that another insurer is the primary insurer may it treat Liberty as an excess insurer.

the burden of establishing the existence of this coverage.[48]

■ On the record before us, there remains an unresolved dispute of fact concerning Maryland's coverage of Abex. The evidence supporting this coverage is arguably persuasive, but the standard for summary judgment requires that the District Court find no dispute of material fact—mere persuasiveness is not enough.[49] Although Abex presented two alleged policies found in the records of its London insurance broker, these policies are stamped "SAMPLE" and "CANCELLED." Of course, as Abex suggests, this could merely denote the fact that only a copy of the policy was sent to London, and that the policy was cancelled at the end of the policy period. On a motion for summary judgment, however, we are not permitted to draw any inferences against Maryland.[50] As Maryland argues, "SAMPLE" could mean that these policies were prepared as only an example of the coverage Maryland *could* provide. Similarly, the fact that neither Maryland nor Abex's *domestic* insurance broker had a copy of the purported policies, and the fact that key provisions of the policies are missing, cast some doubt on the authenticity of these policies.

On remand, the District Court must conduct further proceedings before imposing liability on Maryland. If a factual dispute persists after further discovery, the District Court must hold a trial on this issue.

### III. CONCLUSION

We are fortunate that the Second Circuit has already resolved the principal issues of New York law dispositive of this appeal. Because the Second Circuit is the "home" circuit, we adopt its interpretation of New York law; the duty of each insurer to indemnify Abex is therefore triggered by injury-in-fact. We remand the case to the District Court for a trial on each insurer's

duty to indemnify under this trigger. We further conclude that the insurers are obligated under New York law to defend Abex until the insurers establish that, as a matter of law, there is no possibility of coverage. This duty, of course, includes a duty to reimburse Abex for defense costs already incurred, as well as a duty to assume Abex's defense in all pending and future asbestos cases. Finally, we hold that the District Court must determine whether Maryland insured Abex before imposing either a duty to defend or a duty to indemnify upon Maryland.

*So ordered.*

---

**48.** *See Emons Indus., Inc. v. Liberty Mut. Fire Ins. Co.,* 545 F.Supp. 185, 188 (S.D.N.Y.1982).

**49.** *See National Ass'n of Gov't Employees v. Campbell,* 593 F.2d 1023, 1027 (D.C.Cir.1978).

