**In the Matter of EDWARDS & HANLY, a limited partnership, Debtor.**

**No. 90 Civ. 3822(MEL).**

United States District Court, S.D. New York.

Feb. 25, 1991.

Stroock & Stroock & Lavan, New York City, for appellee Edwards & Hanly, debtor; Brian M. Cogan, Lisa Rosenthal, Evan C. Hollander, of counsel.

Kurtzman & Haspel, Nanuet, N.Y., for NFS Services, Inc.

LASKER, District Judge.

Two years after the closing of the above-captioned bankruptcy case, the debtor, Edwards & Hanly ("E & H"), received a check in the amount of $360,572.03 as a final distribution for its claim in the bankruptcy case of T.P. Richardson Co., Inc. E & H's claim against T.P. Richardson related to T.P. Richardson's sale of short securities on E & H's account.

NFS Services, Inc. ("NFS"), the appellant in this case, provides back office administrative services to entities in the securities business, with a specialty in asset recovery and liquidation of distressed firms. NFS entered an agreement with E & H to provide services related to the recovery and liquidation of E & H's assets. The agreement, originally oral, was reduced to writing in May 1976, prior to the filing of E & H's Chapter XI proceeding. In June 1977, an order was entered by the Bankruptcy Court, pursuant to which NFS continued to provide services to E & H on a 35% contingency basis.

By the end of 1986 it appeared that all assets of E & H which could reasonably be

liquidated had been liquidated. In order to facilitate the closing of the E & H bankruptcy case, the bankruptcy estate sold all its remaining assets (the "Retained Assets") to NFS for $7,500.

NFS argues that, under its agreement to purchase the Retained Assets, it was entitled to the entire proceeds of the T.P. Richardson check or, in the alternative, that it was entitled at least to its contingency fee of 35% based upon its retention as a professional in the bankruptcy proceeding. The Bankruptcy Court found that NFS was not entitled either to the entire proceeds of the T.P. Richardson check—because the T.P. Richardson claim was not within the intended meaning of "Retained Assets," as that phrase was used in the purchase agreement—or to a 35% fee—because it had not filed a proof of claim for its services to E & H in connection with the T.P. Richardson claim.

The standard for appellate review is whether the bankruptcy court's findings of fact and conclusions of law were clearly erroneous or represented an abuse of discretion.

■■■ With regard to NFS's assertion that the T.P. Richardson payment was a "Retained Asset" which it purchased from E & H for $7,500, the Bankruptcy Court ruled that "[t]he Retained Assets do not encompass unknown items or claims such as the T.P. Richardson [c]heck. NFS's purchase of the Retained Assets does not include the purchase of the right to the check proceeds." Decision on Distribution of Certain Funds of the Bankruptcy Court (Blackshear, J.) dated April 3, 1990 (the "Decision") at 11. The Bankruptcy Court noted that the term "Retained Assets" was unambiguously defined in the application for purchase of those assets by NFS as

the interest which E & H might have in certain securities for which it has lost or never received the certificates and any dividends issued in connection with said securities ... The Retained Assets include securities as to which E & H has, during the course of these proceedings, received dividends or notices (the "Known Securities") as well as any secu-

rities as to which E & H has received no dividends or notice, but may have an interest (the "Unknown Securities").

Decision at 5. Furthermore, the written offer by NFS stated that NFS would purchase "all securities for which [E & H] has lost, misplaced or never received the certificates and any cash dividends payable thereon ... and any other dividends or cash distributions which [E & H] failed to receive." Finally, the Bankruptcy Court's order granting the application defined "Retained Assets" as "E & H's interest in any securities."

"Where ... the contract's language admits of only one reasonable interpretation, the court need not look to extrinsic evidence of the parties' intent or to rules of construction to ascertain the contract's meaning." *American Home Products v. Liberty Mutual Insurance Co.*, 748 F.2d 760, 765 (2d Cir.1984). We agree with the Bankruptcy Court that the contract between NFS and E & H was unambiguous and that the term "Retained Assets" as defined in that contract did not include proofs of claim filed in bankruptcy proceedings. Accordingly, the parole evidence rule applies and bars NFS from submitting extrinsic evidence on the issue. It follows that the Bankruptcy Court was not clearly erroneous nor did it abuse its discretion in denying NFS's request for an evidentiary hearing regarding the meaning of the term "Retained Assets" and ruling that the meaning of the term did not embrace the T.P. Richardson check.

■■■ NFS next argues that E & H's securities claim against T.P. Richardson was consistent with the types of claims NFS regularly analyzed and pursued on behalf of E & H pursuant to the 35% contingency agreement between NFS & E & H. NFS maintains that it played an active role in pursuing the T.P. Richardson claim and devoted hundreds of hours of time to the recovery of the claim, for which it has not received any compensation. NFS filed the proof of claim for E & H in the T.P. Richardson bankruptcy, drafted a detailed analysis of the claim, and prepared for possible objection to claims proceedings

and the third party litigation relating to the claim. NFS explains that it never previously made an application for fees with respect to the T.P. Richardson claim because, under the contingency fee arrangement, NFS was not entitled to fees until the T.P. Richardson money came into the bankruptcy estate. NFS also argues that the Bankruptcy Court overlooked the fact that NFS's claim is not based upon its pre-petition work, but upon its post-petition retainer agreement and post-petition work.

There is no evidence of record to show that any of the work allegedly done by NFS related to the T.P. Richardson claim was performed after E & H filed its bankruptcy petition. While there is evidence that NFS may have performed work which related to other aspects of the T.P. Richardson case (such as litigation involving Wells Fargo) after the petition was filed, the record supports the Bankruptcy Court's finding that all work related to the claim for which the check was received was performed before the petition was filed. NFS's claim for 35% compensation as an administrative expense was properly disallowed. Assuming that NFS had an agreement with E & H prior to the filing of the petition for NFS to prepare and file the claim in the T.P. Richardson bankruptcy case in return for a 35% share of the recovery, if any, its rights constituted a contingent claim which existed prior to E & H's bankruptcy. Under § 57(d) of the Bankruptcy Act of 1898 (11 U.S.C. § 93) (the "Act"), "an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court...." Under the Act, "[u]pon confirmation of an arrangement (1) the arrangement and its provisions shall be binding ... upon all creditors of the debtor, whether or not they ... have filed their claims...." Act at § 367. NFS did not file a claim for its contingent fee in the E & H bankruptcy case prior to the confirmation of the plan of arrangement and therefore the claim has been discharged and may not be revived now.

The Bankruptcy Court did not abuse its discretion in holding that the claim was properly viewed as a prepetition claim. The Bankruptcy Court's determination that NFS's claim for 35% of the proceeds of the T.P. Richardson check was not preserved was not clearly erroneous.

The decision and order of the Bankruptcy Court is affirmed and the appeal is denied.

It is so ordered.